1
2
3
4
5
6              **UNITED STATES DISTRICT COURT**
7                    **DISTRICT OF NEVADA**
8  DAVID PROTHRO,                          )
9              Plaintiff,                   )
10             v.                           )        3:13-CV-108-RCJ-WGC
                                            )
11  PRIME HEALTHCARE SERVICES-RENO,         )        **ORDER**
    LLC,                                    )
12                                          )
             Defendant.                     )
13  _____ )
14
15         Currently before the Court is Defendant's Motion for Judgment on the Pleadings (#14)
16  and Defendant's Partial Motion to Dismiss or, in the Alternative, Partial Motion to Stay
17  Proceedings Pending Arbitration (#15).
                        **BACKGROUND**
18
19         In March 2013, Defendant Prime Healthcare Services-Reno, LLC removed this case
20  to this Court pursuant to federal question jurisdiction.   (Pet. for Removal (#1) at 1-2).
21  Defendant attached Plaintiff David Prothro's First Amended Complaint ("FAC") which had been
    filed in the Second Judicial District Court in Washoe County, Nevada.  (FAC (#1) at 8).
22
23         The FAC alleged the following.  (*Id.*).  Plaintiff was a resident of Nevada and was
24  "employed by St. Mary's Regional Medical Center ["SMRMC"], an entity owned and currently
25  operated by Prime Healthcare Services-Reno, LLC."  (*Id.*).  Plaintiff filed a charge of
26  discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in a timely
27  fashion.  (*Id.* at 8-9).  The EEOC issued Plaintiff a right to sue letter and Plaintiff filed his
    complaint in a timely manner.  (*Id.* at 9).
28
           The FAC alleged the following. (*Id.*). In September 2008, Dr. Richard Bryan, Vice Chief

of Staff and member of the Peer Review Committee, informed Plaintiff that an unnamed nurse was reviewing some of Plaintiff's actions. (*Id.*). On November 15, 2008, Plaintiff submitted a complaint to his "employer" and "requested accommodations for his disability: dyslexia." (*Id.*). Plaintiff requested a proctor, i.e. someone who could assist him compiling and documenting patient-related documents. (*Id.*). Two weeks later, Plaintiff received a letter from Dr. Bryan informing him that some of his cases were being given to an outside physician for review. (*Id.*). In January 2009, Plaintiff received a letter from the Medical Executive Committee ("MEC") for SMRMC expressing concern about Plaintiff's interventional cardiology practice. (*Id.*). The letter stated that the outside reviewer felt that five of the six cases were below the standard of care. (*Id.*).

The FAC alleged the following. (*Id.*). That same month, Plaintiff received a letter from the Counsel for Catholic Health Care West (the owner of SMRMC prior to Defendant) in response to Plaintiff's request for accommodations. (*Id.* at 10). The letter asked Plaintiff to submit documentation of his dyslexia and the accommodations requested. (*Id.*). Plaintiff's attorney advised him not to act on the hospital's request until after the meeting with the Ad Hoc Committee. (*Id.*). In March 2009, Plaintiff met with the Ad Hoc Committee. (*Id.*). In April 2009, Plaintiff received a summary suspension from Defendant based upon the findings and recommendations of the MEC which revoked Plaintiff's interventional privileges. (*Id.*). Plaintiff's privileges could be reinstated upon completion of a mini-fellowship to be approved by the MEC. (*Id.*). The MEC offered Plaintiff assistance in locating a mini-fellowship although no such program existed in the country that met the definition. (*Id.*). Plaintiff attempted to work with Dr. Ronald Sobczak, Chief of Staff, over the next few months in locating an acceptable mini-fellowship but all potential programs and courses were rejected by the MEC. (*Id.* at 11). After an investigation in January 2010, Plaintiff requested a fair hearing. (*Id.*). Prior to this hearing, Plaintiff and Defendant entered into an agreement of proctorship and continuing education that enabled Plaintiff the ability to reapply for privileges after completion. (*Id.*).

The FAC alleged the following. (*Id.*). In May 2010, Plaintiff, SMRMC, and Catholic

2

Health Care West signed a Settlement Agreement that specified approval of a mini-fellowship program. (*Id.* ). Paragraph 7 of the Settlement Agreement stated, "However, nothing in this paragraph shall be deemed to release SMRMC from its obligation to comply with the Americans with Disabilities Act of 1990 as amended." (*Id.*). In May 2011, Plaintiff successfully completed the approved mini-fellowship program. (*Id.*). On September 9, 2011, Plaintiff received a letter from Dr. Richard Scott informing him that the Peer Committee conditionally and temporarily reinstated Plaintiff's interventional cardiology privileges. (*Id.*). The conditions stated that Plaintiff was to be proctored for 10 cases over 6 months and that Defendant would assist Plaintiff in locating a proctor. (*Id.*). Defendant failed to assist and/or provide Plaintiff with a proctor. (*Id.*). Dr. Scott and Dr. Daniel Ferguson stated that no interventional cardiologist wanted to proctor Plaintiff for the reinstatement of his clinical privileges. (*Id.* at 11-12).

The FAC alleged the following. (*Id.* at 12). In September 2011, Plaintiff learned that, pursuant to the Settlement Agreement, he could not reapply for privileges with SMRMC until SMRMC complied with the ADA. (*Id.*). On October 19, 2011, Plaintiff sent a letter to Dr. Scott advising Dr. Scott of his difficulty in locating a proctor and asked whether a credentialed staff physician could act as a proctor. (*Id.*). Plaintiff did not receive a response. (*Id.*). Plaintiff applied for a position as an interventional cardiologist but never received a response from Defendant regarding his application even though he was qualified. (*Id.*). On February 15, 2012, Plaintiff sent Dr. Scott a letter addressing the failure of SMRMC and Catholic Healthcare West to provide accommodations for Plaintiff and his belief that their subsequent actions and suspension were attempts to discriminate and retaliate against his initial ADA complaint. (*Id.*). Plaintiff sent Dr. Scott a letter regarding the same issues on April 30, 2012. (*Id.*). On May 7, 2012, Dr. Scott advised Plaintiff in a letter that Plaintiff could apply for privileges and should submit a list of accommodations. (*Id.*). On May 31, 2012, Plaintiff sent a letter to Dr. Scott informing Dr. Scott that he had provided a list of accommodations in his February 15, 2012 letter and that Dr. Scott should contact his attorney. (*Id.* at 12-13). As of the date of the complaint, Defendant had not contacted Plaintiff's attorney. (*Id.* at 13).

1        The FAC alleged that Defendant had reported Plaintiff's "handicap" to the Practitioner's

2 Data Bank and, as a result, Plaintiff had been hindered in his ability to seek employment

3 elsewhere. (*Id.*). Plaintiff now experiences a $250,000.00 difference in income between he

4 and the average cardiologist. (*Id.*). Plaintiff asserted that Defendant was judicially estopped

5 from denying Plaintiff's rights under the ADA because Defendant had previously applied the

6 ADA to Plaintiff's earlier allegations and requests for accommodations. (*Id.* at 14).

7        In the FAC, Plaintiff alleged five causes of action. (*Id.* at 14-17). In the first cause of

8 action, Plaintiff alleged violations of the ADA and NRS § 613.330. (*Id.* at 14). Specifically,

9 Plaintiff alleged that he was unable to perform his job without an accommodation and that he

10 had a disability as defined by the statutes. (*Id.*). Plaintiff alleged that Defendant had refused

11 to engage in the accommodative process as required by the ADA and that Defendant's

12 termination of Plaintiff violated the ADA. (*Id.*). In the second cause of action, Plaintiff alleged

13 retaliation in violation of the ADA and NRS § 613.330. (*Id.* at 15). In the third cause of action,

14 Plaintiff alleged breach of contract of the Settlement Agreement. (*Id.* at 16). In the fourth

15 cause of action, Plaintiff alleged breach of the duty of good faith and fair dealing of the

16 Settlement Agreement. (*Id.*). In the fifth cause of action, Plaintiff alleged negligence because

17 Defendant owed him a duty of care pursuant to the Settlement Agreement to act reasonably

18 when handling his credentialing privileges and need for an accommodation. (*Id.* at 17).

19        The pending motions now follow.

20                           **LEGAL STANDARD**

21 **I.   Fed. R. Civ. P. 12(c)**

22        Rule 12(c) of the Federal Rules of Civil Procedure provides: "[a]fter the pleadings are

23 closed–but early enough not to delay trial–a party may move for judgment on the pleadings."

24 Fed. R. Civ. P. 12(c). "For purposes of the motion, the allegations of the non-moving party

25 must be accepted as true, while the allegations of the moving party which have been denied

26 are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542,

27 1550 (9th Cir. 1990). "Judgment on the pleadings is proper when the moving party clearly

28 establishes on the face of the pleadings that no material issue of fact remains to be resolved

and that it is entitled to judgment as a matter of law." *Id.* "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Id.* Generally, if matters outside the pleadings are presented to and considered by the court, the motion must be converted into a Rule 56 motion for summary judgment and the parties given a reasonable opportunity to present additional material. Fed.R.Civ.P. 12(d); *Bingue v. Prunchak*, 512 F.3d 1169, 1172 n.4 (9th Cir.2008). Where the court grants a Rule 12(c) motion, the prevailing party obtains a final judgment in their favor.

The standards governing a Rule 12(c) motion for judgment on the pleadings are the same as those governing a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**II.   Fed. R. Civ. P. 56**

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such

1   that a reasonable jury could return a verdict for the nonmoving party. *Id.*

2       The moving party bears the initial burden of identifying the portions of the pleadings and
3   evidence that the party believes to demonstrate the absence of any genuine issue of material
4   fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265
5   (1986). A party asserting that a fact cannot be or is genuinely disputed must support the
6   assertion by "citing to particular parts of materials in the record, including depositions,
7   documents, electronically stored information, affidavits or declarations, stipulations (including
8   those made for purposes of the motion only), admissions, interrogatory answers, or other
9   materials" or "showing that the materials cited do not establish the absence or presence of a
10  genuine dispute, or that an adverse party cannot produce admissible evidence to support the
11  fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the
12  motion, the burden shifts to the nonmoving party to come forward with specific facts showing
13  that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
14  U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a
15  scintilla of evidence in support of the plaintiff's position will be insufficient; there must be
16  evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252,
17  106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by
18  relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d
19  1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier
20  of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475
21  U.S. at 587, 106 S.Ct. at 1356.

22                                    **DISCUSSION**

23  **I.    Defendant's Motion for Judgment on the Pleadings (#14)**

24      Defendant moves for judgment on the pleadings on the first, second, and fifth causes
25  of action. (Mot. for Judgment on the Pleadings (#14) at 1). Defendant argues that Plaintiff is
26  trying to characterize his breach of contract case as an employment discrimination case. (*Id.*
27  at 2). Defendant asserts that Plaintiff's disability-related claims fail as a matter of law because
28  both the federal and state statutes protect "employees." (*Id.* at 6). Defendant contends that,

                                          6

1   despite what Plaintiff states in his complaint, Plaintiff was never employed by Defendant, but

2   instead only held medical staff privileges at SMRMC which permitted Plaintiff to access the

3   hospital's facilities and technology, authorizing him to admit and treat patients at SMRMC. (*Id.*

4   at 7).   Defendant argues that in Plaintiff's biennial Applications for Reappointment to the

5   SMRMC medical staff Plaintiff certified that he was not employed by SMRMC.   (*Id.*).

6   Defendant attaches the Applications for Reappointment and argues that the Court may

7   consider them because the FAC necessarily relies on them. (*Id.* at 7 n.4). Defendant attaches

8   the EEOC dismissal and notice of rights issued to Plaintiff. (*Id.* at 8). Defendant asserts that

9   Plaintiff cannot save his claims by relying on judicial estoppel. (*Id.*). Defendant also argues

10  that Plaintiff's negligence claim is barred by the economic loss doctrine. (*Id.* at 9).

11  In support of its motion, Defendant attaches four Applications for Reappointment signed

12  by Plaintiff on May 1, 2006 (Exh. 1 (#14-1) at 2, 4); June 6, 2008 (Exh. 2 (#14-2) at 2, 4); May

13  25, 2010 (Exh. 3 (#14-3) at 2, 4); and May 24, 2012 (Exh. 4 (#14-4) at 2, 4).   The 2006

14  Application states under acknowledgments and agreements with respect to all entities:

15
    Independent Action, No Employment
16  I acknowledge that each Entity has its own criteria for acceptance, and I may be
    accepted or rejected by each independently.   I further acknowledge and
17  understand that my cooperation in obtaining information and my consent to the
    release of information do not guarantee that any Entity will grant me
18  Membership or Participation. I understand that my application for Membership
    or Participation with the Entity is not an application for employment with the
19  Entity and that acceptance of my application by the Entity will not result in my
    employment by the Entity.

20  (Exh. 1 (#14-1) at 3).   The 2008 Application states under Standard Authorization, Attestation

21  and Release for Health Plans, Health Insurers and Health Care Organizations that the form

22  is "Not for Use for Employment Purposes."  (Exh. 2 (#14-2) at 3).   The 2008 Application

23  contains the same provision of no employment as the 2006 Application. (*Id.*).   The 2010 and

24  2012 Applications state the same provisions as the 2008 Application. (Exh. 3 (#14-3) at 3;

25  Exh. 4 (#14-4) at 3).   Defendant also attached a copy of the EEOC's Dismissal and Notice of

26  Rights form dated September 24, 2012. (Exh. 5 (#14-5) at 2).   The EEOC stated that it was

27  closing its file on the charge because there was "no jurisdiction."  (*Id.*).

28  In response, Plaintiff seems to suggest that Defendant's motion should be converted

7

1   into one for summary judgment based on the filing of matters outside the pleadings. (Opp'n

2   to Mot. for Judgment on the Pleadings (#19) at 9). Plaintiff argues that the ADA applies

3   because the Settlement Agreement says the ADA applies. (*Id.* at 10). Plaintiff asserts that,

4   even if an employment relationship must exist, he can establish one through a fact-based

5   analysis. (*Id.*). Plaintiff cites to *Clackamas Gastroenterology Associates, P. C. v. Wells*, 538

6   U.S. 440, 123 S.Ct. 1673, 155 L. Ed. 2d 615 (2003) as support that he is an employee. (*Id.*).

7   Plaintiff asserts that, even if no employment relationship exists, the ADA applies pursuant to

8   *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938 (9th Cir. 2009). (*Id.* at 13). Plaintiff contends

9   that the economic loss doctrine does not apply because he is seeking compensatory and

10  punitive damages. (*Id.*).

11        In support of his response, Plaintiff attaches several exhibits. Plaintiff attaches the

12  Settlement Agreement dated May 2010. (Exh. 2 (#19-2) at 2-11). Paragraph 7 of the

13  Settlement Agreement states in full:

14        **Complete Release**. The foregoing shall be deemed the full and final resolution
          of this matter. Dr. Prothro hereby releases and forever discharges the MEC,
15        SMRMC, and all of their respective past and present employees, agents,
          representatives, officers, directors, members, affiliated entities, and any other
16        person, firm or other entity now, previously or hereafter affiliated in any manner
          with any of the above, from any and all obligations, claims, demands, liability,
17        actions or causes of action presently known or unknown, however derived or
          created, arising out of or relating to the MEC's summary suspension of Dr.
18        Prothro's PCI privileges. However, nothing in this Paragraph shall be deemed
          to release SMRMC from its obligation to comply with the American with
19        Disabilities Act of 1990, as amended.

20  (*Id.* at 5). Plaintiff also attaches his November 15, 2008 letter indicating that he had dyslexia

21  (Exh. 1 (#19-1) at 2); Dr. Scott's September 8, 2011 letter to Plaintiff (Exh. 3 (#19-3) at 2);

22  Plaintiff's October 19, 2011 letter to Dr. Scott (Exh. 4 (#19-4) at 2); Plaintiff's February 15,

23  2012 letter to Dr. Scott (Exh. 5 (#19-5) at 2-3); Dr. Scott's May 7, 2012 letter to Plaintiff (Exh.

24  6 (#19-6) at 2); and Plaintiff's May 31, 2012 letter to Dr. Scott (Exh. 7 (#19-7) at 2).

25        In reply, Defendant argues that Plaintiff does not dispute the authenticity of the

26  Applications for Reappointment in which Plaintiff repeatedly and expressly acknowledged that

27  he was not employed by Defendant. (Reply to Mot. for Judgment on the Pleadings (#24) at

28  1). Defendant argues that its exhibits do not convert the motion into one for summary

1  judgment because the FAC necessarily relies on those documents.  (*Id.* at 2 n.1).  Defendant

2  asserts that Plaintiff's reliance on *Clackamas* and *Fleming* are misplaced.  (*Id.* at 3, 7).

3      As an initial matter, the Court finds that both parties have presented matters outside of

4  the pleadings with respect to the motion for judgment on the pleadings.  As such, the Court

5  converts the motion for judgment on the pleadings into one for a motion for summary

6  judgment.  The Court finds that both parties have had an opportunity to provide evidence.

7      "The ADA prohibits an employer from discriminating 'against a qualified individual with

8  a disability because of the disability.'"  *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246

9  (9th Cir. 1999) (citing 42 U.S.C. § 12112(a)).  An "employee" means "an individual employed

10  by an employer."  42 U.S.C. § 12111(4).  An "employer" means "a person engaged in an

11  industry affecting commerce who has 15 or more employees for each working day in each of

12  20 or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 12111(5).

13  The ADA only applies to employer-employee relationships in the workplace and does not

14  cover discrimination claims by independent contractors.[1]  *See  Fleming*, 587 F.3d at 939.

15      In *Clackamas*, the Supreme Court addressed whether four physicians actively engaged

16  in medical practice as shareholders and directors of a professional corporation could be

17  counted as "employees" for the purposes of determining whether the defendant was an

18  "employer" under the ADA with 15 or more employees.  *Clackamas*, 538 U.S. at 442, 123 S.Ct.

19  at 1675.  The Supreme Court found that the ADA's definition of "employee" was "circular" and

20  explained nothing.  *Id*. at 444, 123 S.Ct. at 1677.  In such cases, the Supreme Court sought

21  guidance from the conventional master-servant relationship as understood by common-law

22  agency doctrine.  *Id*. at 445, 123 S.Ct. at 1678.  In *Clackamas*, the Supreme Court held that

23  the element of control was the principal guidepost for determining whether the shareholder-

24  directors were employees.  *Id*. at 448-49, 123 S.Ct. at 1679-80.  The Supreme Court focused

25  on the following six factors to make its determination: (1) whether the organization could hire

26

27      [1]  In contrast, the Ninth Circuit has held that § 504 of the Rehabilitation Act, 29 U.S.C.
28  § 794 covers discrimination claims by independent contractors.  *See  Fleming*, 587 F.3d at
939.

or fire the individual or set the rules and regulations of the individual's work; (2) whether and, if so, to what extent the organization supervised the individual's work; (3) whether the individual reported to someone higher in the organization; (4) whether and, if so, to what extent the individual was able to influence the organization; (5) whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and (6) whether the individual shared in the profits, losses, and liabilities of the organization. *Id*. at 449-50, 123 S.Ct. at 1680.  The Supreme Court held that the courts should look to whether the parties intended that the individual be an employee as expressed in written agreements or contracts. *Id*. at 450-51, 123 S.Ct. at 1680-81.  The Supreme Court held that whether a shareholder-director is an employee depends on all of the incidents of the relationship with no one factor being decisive. *Id*. at 451, 123 S.Ct. at 1681.

In this case, the Court finds that Plaintiff is not an employee of Defendant Prime Healthcare Services-Reno.  Defendant provides evidence that Plaintiff signed Applications for Reappointment to the SMRMC medical staff that explicitly stated that the documents were "Not for Use for Employment Purposes" and that the Applications were not for employment and that acceptance of the Applications did not result in employment by SMRMC.  The Court finds that Defendant did not provide any evidence that would establish an employee-employer relationship and instead only cites to allegations in his complaint in an attempt to establish a master-servant relationship.  The Court further notes that, even if Plaintiff had provided evidence to establish a master-servant relationship, federal appellate circuit courts have found that doctors who lose their hospital privileges are independent contractors rather than employees. *See Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 343 (8th Cir. 2006) (holding in an ADA case that a physician challenging the termination of his privileges at a hospital was not an employee but rather an independent contractor); *Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004) (holding that a surgeon with surgical privileges was not an employee of hospital and thus could not bring suit under either the Age Discrimination in Employment Act or Title VII of the Civil Rights Act of 1964); *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 805-06 (7th Cir. 1999) (holding that an anesthesiologist whose staff

1   privileges were terminated was not a hospital employee and thus could not bring suit under

2   either the Age Discrimination in Employment Act or Title VII of the Civil Rights Act of 1964).

3          However, this Court recognizes that the Settlement Agreement, a contract, specifically

4   states that SMRMC would comply with the ADA.  Nonetheless, this Court finds that it lacks

5   subject-matter jurisdiction over this case because Plaintiff is not an employee of Defendant.

6   The Court notes that "parties cannot, by their consent, confer jurisdiction upon a federal court

7   in excess of that provided by Article III of the United States Constitution." *Hill v. Blind Indus.*

8   *& Servs. of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999) *opinion amended on denial of reh'g*,

9   201 F.3d 1186 (9th Cir. 1999).  The Court finds that, although the federal statute does not

10  apply to this case because Plaintiff is not an employee of Defendant, the parties have

11  contracted for ADA-like rights in the Settlement Agreement.  Thus, the Court finds that Plaintiff

12  is entitled to ADA-like rights as a contractual matter among the parties and finds that Plaintiff's

13  ADA-like claims are, in fact, breach of contract claims governed by state law.  Because Plaintiff

14  fails to state a true ADA claim this Court lacks federal question jurisdiction over this case.

15  Accordingly, the Court dismisses the case for lack of subject-matter jurisdiction.

16  **II.   Defendant's Partial Motion to Dismiss or, in the Alternative, Partial Motion to Stay Proceedings Pending Arbitration (#15)**

17          Defendant seeks to dismiss the third, fourth, and fifth causes of action to the extent that

18  these causes of action arise from or are covered by the Settlement Agreement, which contains

19  a mandatory arbitration provision.  (Partial Mot. to Dismiss (#15) at 1).  Defendant argues that

20  this Court lacks subject-matter jurisdiction over these claims because they are subject to

21  binding arbitration. (*Id.* at 2).

22          In response, Plaintiff agrees that the arbitration provision applies to his breach of

23  contract claims.  (Limited Opp'n to Partial Mot. to Dismiss (#22) at 2).

24          Plaintiff filed a reply.  (Reply to Partial Mot. to Dismiss (#23) at 1).

25          The Court grants Defendant's partial motion to dismiss the third, fourth, and fifth causes

26  of action.  However, because the Court finds that all five of Plaintiff's claims are breach of

27  contract claims, as discussed above, the Court dismisses the entire case for lack of subject-

28

1  matter jurisdiction and directs the parties to proceed to binding arbitration as set forth by the

2  Settlement Agreement.   The Court further notes that should the parties seek judicial

3  intervention, the appropriate venue is state court because there is no federal question or

4  diversity jurisdiction in this case.

5                                    **CONCLUSION**

6          For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Judgment on

7  the Pleadings (#14) is GRANTED. The Court converts this motion into one for summary

8  judgment and DISMISSES the entire case for lack of subject-matter jurisdiction.

9          IT IS FURTHER ORDERED that Defendant's Partial Motion to Dismiss or, in the

10  Alternative, Partial Motion to Stay Proceedings Pending Arbitration (#15) is GRANTED.  As

11  discussed above, the Court DISMISSES all claims in this case for lack of subject-matter

12  jurisdiction.

13          The Clerk of the Court shall enter judgment accordingly.

14          Dated this 16th day of October, 2013.

15

16

17                                    _____
                                      United States District Judge

18

19

20

21

22

23

24

25

26

27

28